I'm back. Thank you, Your Honor. Good morning once again. Tanned, rested, and ready. Turning now to the Jimenez case, here the qualified immunity argument focuses on basically two components. The first is that the District Court did not grant summary judgments on the Fourth Amendment claims and the Eighth Amendment claims, even while the Court admitted that they had no substance to them because the claims for excessive force in the jail context for pretrial detainee are decided under the Fourteenth Amendment. That standard is the Shocks to Conscience standard. And the first step that the District Court should have done, we believe, is to have ruled that the Fourth Amendment claims and the Eighth Amendment claims should be dismissed. Since the Court did not do that, we're asking that this Court do that. And we also ask that you take a look at the three separate incidents under that Shocks to Conscience standard to determine whether the excessive force was used. You know, you have somewhat the same problem in this case as the last one in that you've got, maybe more so in that you've got highly divergent stories about what happened. If I read a plaintiff's story about what happened, he's sort of a good guy who's mumbling and trying to get himself understood by the guards. And they insist on, you know, I don't have a jail cell to go to, I can't talk because I'm medicated. You know, he's just trying to be as cooperative as could be. If you look at your client's account of what happened, he's the leader of the revolt. He is practically beating up the nurse. He bites and headbutts deputies without provocation. And I wasn't there. What do you do with these? I mean, they're much more divergent than the usual case we see. They are divergent. Yes, Your Honor. I think here for any reason we couldn't, we don't. Is there any reason we're not required to just take his facts at face value? Well, it is true that, again, our belief is for at least two of these incidents, the facts that's described by plaintiff when viewed objectively on the part of the deputies who were involved, show that the deputies did not use excessive force here. The standard is not whether the force used was reasonable, but whether the force was used such that it shocked the conscience, that is that it didn't serve any legitimate purpose for the jail in the jail setting. And the security of the jail has been recognized as a legitimate interest of those who are operating the jail. So in the instance of the first incident in the day room, where plaintiff says it was just unreasonable for them to not listen to him, explain that he was not participating in the disturbance that he admits was going on, that reasonableness standard doesn't, that it was unreasonable to not listen to him, but instead use force to control the entire situation, not just against him, but against everyone who was there present in the day room. His excuse is that I was, while I was present, I wasn't participating, doesn't make the use of force there. He says just a little more. What he says is, I didn't have any place to go. They said, they gave an order, and not only didn't I have anything to do with the altercation, but I hadn't been assigned a cell. All I'm trying to tell him is, well, I don't have any place to go. I can't follow your order. There's nothing I, you've given an order, which as to me is, is, I can't carry it out. That's in the record, right? Yes. What do we do with that? Well, the. Are they entitled to give him an order he can't carry out, and then beat him up for failure to follow the order he can't carry out? Well, if you take into account the entire context of the situation, which is that it wasn't only the plaintiffs that the deputies were trying to control in that context, but there were other prisoners there in the jail that the deputies were trying to control who were resisting that order. And so the fact that they used force against all of those who were present in the day room in that situation doesn't make their behavior there unconstitutional. Well, he alleges, though, that he wasn't resisting, that he didn't do anything to physically resist. He was just saying, I don't have a place to go. Now, I know you disagree with that characterization, but we have to assume the facts is true. So do you think under that scenario that an officer may constitutionally pepper spray someone, put them to the ground, slam them and beat them? Well, the. That's the facts is alleged. I know you may disagree. Well, those are the facts that are alleged. The individual, the plaintiff is included in his factual allegations, allegations against people who are not individual defendants here, including the deputy that did the pepper spraying. And one of the individual named defendants is someone who did not use any force against the plaintiff at all here. But the deputies. I thought we were just talking more generically. I understand your individual defenses. But do you think as a constitutional matter, could you say all these deputies could use, and you're speaking generically, reasonable force? But do you think if someone, if hypothetically a pretrial detainee is in the situation the plaintiff doesn't resist, tries to explain, do you think that officers may constitutionally pepper spray him and beat him? I think the context matters. And it's up to the court to decide whether in the context of this jail disturbance, whether the inmates who were present who were participating in the disturbance, as well as inmates who were present who say they were not participating in the disturbance, can have force used against them. And our position is that it's too difficult in that situation for the deputies to be, for there to be a bright line between those who say they, who say after the fact they weren't participating in the protest, to being in the midst of it, that in that situation they have an interest in keeping the jail area secure, and that using force to effectuate that interest is appropriate and constitutional here. Even if someone's not resisting? Yes, Your Honor. I do think that's right, even someone who is not resisting, when the context is that he's in a group of inmates who are resisting. And his story is that he didn't have any choice but to be in that spot and to be there at that time. And our view is that there was no unconstitutional force used in that day room because of the context that it was in. You're right that if he was the only inmate. I thought his testimony, I may be mistaken in my recollection, I thought his allegation was that the disturbance had been stopped and that everyone had complied except for him or most everyone. I don't believe that that's what the testimony was, but I don't remember specifically for that response. Is there any evidence in the record, one way or another, to substantiate his claim or refute his claim that he didn't have a cellar sign? I find the idea that he's there with no cellar signs inherently improbable. I thought the first thing they do before they let you go is to assign you a cell. Is there anything in the record, one way or another, on that point? There's nothing in the record other than his declaration on that topic. And so I don't know the answer to that question. I'd like to turn briefly to the second incident where the plaintiff, by his own description, was in such severe discomfort and disorientation that he couldn't communicate when taken to the infirmary there. I think that given that disorientation, he really is unable to testify about what was going on around him. He's unable to contradict the belief and the testimony of the deputies who did deal with him in their description of him resisting. He says he didn't resist, but I believe that the self-described drug reaction that caused him to be taken to the infirmary in the first place really means he has no foundation for refuting what they said, or when saying that he didn't intend to be uncommunicative and uncooperative, that that should count as though he were not uncommunicative and were not uncooperative. So, again, there, even taking his testimony, viewed through the objective... But you aren't taking his testimony. You're disputing his testimony. Well, but we're taking his testimony, but it needs to be... That sounds like a jury argument or cross-examination to me. But it needs to be viewed through what the deputies saw objectively. Right, so taking what he says, he's not talking, and they pepper spray him and beat him again. That's what he says. You say, well, he was disoriented. He couldn't have said that. How are we supposed to judge that? Based on the fact that I think there's no foundation for asserting what his behavior was like because he says himself that he was disoriented at the time from the drug reaction. Yeah, but he might be oriented enough to remember being pepper sprayed and beaten. I mean, we don't know that. How can we make that judgment as an appellate court? I understand. And I see that my time is up. So unless the Court has any other questions, I'll see you then. We'll hear from the closing counsel. Good morning. Jeff Flum of Davis. I remain for the plaintiff. I want to go right to the first incident. Your Honor, you are correct. The record does say that the inmates were brought back to their cells after the disturbance. My client, trying to explain to Lieutenant Franklin, I don't have a cell. I was sleeping on a mattress in the day room. Two deputies come from behind, slam him to the floor, start beating him under the supervision of Lieutenant Franklin. He is then taken to a clinic where Deputy Bergener taunts him, again thrown to the floor, beaten and kicked. Is there any evidence to corroborate that he doesn't have a cell? Just my client's affidavit, Your Honor, which must be accepted as true. There's no evidence in the record contradicting that. They did not dispute that he did not have a cell to go to. Lieutenant Franklin acknowledges in his affidavit that, you know, Mr. Jimenez was trying to explain something, but he was being combative and then aggressive and raised his arm. And my client was disputing that, saying he was not provoking anything, was not resisting, was merely trying to explain to Lieutenant Franklin, I don't have a cell to go into. And at that point, deputies, under the supervision of Lieutenant Franklin, threw him to the ground and beat him and kicked him. Without being able to prove anything. How far are you in discovery in this? Is discovery completed? Discovery is completed. We had a jury trial set when the defendants moved for summary judgment. As to the second incident, I think I completely agree. Yes, he was disoriented from adverse reaction to medication. Whether a jury would credit that testimony, that's up to the jury and not up to the district court or this Court to make factual findings of whether Mr. Jimenez could remember whether four deputies violently threw him to the floor, beat him, kicked him. Another deputy comes on the scene with a flashlight and strikes him repeatedly against the back and the shoulder, causing massive injuries to my client, requiring him to go to the clinic. Again, as the district court found, every single material fact is disputed. The district court commented, are we even talking about the same case? If you credit Mr. Jimenez's account, a peaceful inmate, not resisting, not doing anything to provoke anything, and ten deputies brutalized him without any justified government interest and under Chavez and Saucier, that is unreasonable and qualified immunity cannot lie under those circumstances. Do you have such a divergent set of facts that clearly what Mr. Jimenez is saying constitutes a constitutional violation. The facts are much stronger in this case than in the domestic violence case of the previous appeal. Why did they strike him repeatedly? Why did they kick him and beat him and hit him with a flashlight and nearly choke him into unconsciousness and left him ---- You have to show cruelty, you have to show extreme cruelty. What is the standard again? Conduct intended to injure without any justifiable government interest under Chavez, the Supreme Court's decision. That is the standard. And if you accept Mr. Jimenez's account, these deputies acted sadistically. When someone brutally beats someone and kicks them and strikes them with a flashlight, nearly chokes them into unconsciousness, when an inmate is doing nothing to resist or provoke that attack, there can be no government interest that justifies that conduct. The district court probably found that those set of facts constitute sadistic and intentional conduct without any justifiable government interest. There could be no reason, even in the Twin Towers facility, for a deputy sheriff without cause, without resistance, without provocation, to kick and beat and slam with a flashlight an inmate. There's no justification for that. And under this Court's decision, it feels ---- I mean, if there's a melee going on and he's there in the middle of it and, you know, he's, instead of following orders or what they see as following orders, he's insisting and talking to them, I don't know. I mean, it may have been a mistake. It may have been wrong of him to do it. But I can ---- the time was still order, and I don't see that that's wholly justified or cruel or anything like that. And, Your Honor, I acknowledge that you have to look at the security interests of this Court's decision in Gomez, where there's a prison riot going on and inmates are fighting and inmates have knives, and one of the officers had a rifle and was trying to break up the fight and shot, and it accidentally hit the plaintiff. Under those set of facts, it could be a reasonable mistake. You know, maybe you shouldn't have fired or you should have aimed more closely here. There's no reasonable mistake of fact. There could be no justification when the record, except that it's true, for my client is there was a disturbance. The inmates were sent to their cell. My client, attempting to explain to Lieutenant Franklin, Lieutenant Franklin, I have no cell to go to. And what do the deputies do? They, instead of handcuffing him, which would have been a reasonable response, all right, Mr. Jimenez, we'll handcuff you. We'll try to deal with the security situation. We'll find out whether you do have a cell. That's reasonable. But it is not unreasonable. It is wanton and sadistic to pull him to the ground and beat him and kick him repeatedly when he's not resisting or provoking anything. There could be no legitimate penal justification for that conduct. There are alternatives. I have some trouble visualizing your client's version of events. You know, they have this altercation, right? There's a prison riot. And I guess it would follow your, you know, they give this order and everybody neatly follows back to their cell, except, you know, he sort of left standing behind saying, excuse me, I have a cell to go to. And they say, well, you know, I find that scenario not the way things work in real life. And I don't think this is the way, sort of the Rashomon retelling of the story from a client, from his point of view. I just find it inherently incredible. I think what happens is they have an altercation. They order people to their cells and they don't sort of neatly say, file back. You know, they sort of reluctantly go back and they're knocking heads and pepper spraying people trying to restore order. In the midst of that, your client gets pepper sprayed. And, Your Honor, we probably wouldn't want you on our jury. But that's precisely it. You may not find it believable, but on the summary judgment record. It's not a question of believability. It's a question of basic plausibility. If he had said that, you know, I was actually projecting myself to China, and he could say that, but I don't think I have to buy it for purpose of summary judgment or anything else. I mean, we believe the evidence will show he did not have a cell to go to, that he was sleeping on a mattress. And I can envision a circumstance. And more importantly, I think a jury could reasonably. Kennedy. And a mattress where? In the place where the altercation was happening? I think they were. This was sort of a scene where they were congregating. They were out. They weren't in their cells. And it's not – I wouldn't describe it as a prison. Could he have gone back to the mattress? I think his mattress was in another location. My understanding is that this is a place where inmates were congregating. There was a disturbance. Inmates were ordered into their cells. They did comply. Mr. Jimenez had no cell to go to, according to his testimony, and tried to explain to Lieutenant Franklin, because of overcrowding conditions, I've been sleeping on a mattress in the day room, another room. At that point, the deputies throw him to the ground. They say he's going to go to the mattresses, and they mistook it for a Godfather reference. A jury will decide whether under that set of circumstances it's reasonable or not. But under the facts alleged, which have to be accepted as true, he's explaining I don't have a cell. Instead of the deputies doing something reasonable, okay, we'll handcuff you, throw him to the ground violently, beat him and kick him, repeatedly injuring him while he's not resisting or provoking anything. That is more than sufficient to state a constitutional violation under Chavez and Saucier. There could be no justification under those set of facts alleged by Mr. Jimenez for what the deputies did. This is not the situation where you have a prison riot, where the facts are undisputed like in Gomez, where the court could say qualified immunity does properly lie because the officer made a mistake. There was no evidence that he intended to injure the plaintiff. Here, when officers throw someone to the ground who's not resisting or doing anything to provoke an attack and brutally beat him, there's no mistake of fact. There's no other matter of law finding that the conduct of the officers was reasonable under those circumstances. It's simply unreasonable or enough to get to the jury. We ultimately may lose at the jury trial, but what we're asking for is the right to have a jury determine whose version, whose story is accurate. If the jury believes my client, we're going to win and get a substantial monetary award because Mr. Jimenez was brutalized without cause. If they believe the deputies, we'll certainly lose. That my client was the aggressor and was provoking and was awful and the leader of the riot, and we'll lose. But under Chavez and Saucier, the district court properly found every single material fact is disputed. And under those set of circumstances, summary judgment was properly denied. Thank you. Thank you. Would you like to take a motion on that? I don't know if we're going to allow the Court to ask a question. Okay. Thank you. The case is argued. We'll stand for a minute.
judges: Lay , Kozinski, Thomas